UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| LEON DEWAYNE HARDIN, | Case No. CV 14-03785-CAS (DFM) |
| Petitioner, | |
| v. | Report and Recommendation of United States Magistrate Judge |
| J. SOTO, Warden, | |
| Respondent. | |

This Report and Recommendation is submitted to the Honorable Christina A. Snyder, United States District Judge, pursuant to the provisions of 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.

## I.

## BACKGROUND

**A.    Procedural History**

On April 8, 2011, a Los Angeles County Superior Court jury convicted Petitioner Leon Dewayne Hardin ("Petitioner") of one count of attempted carjacking and one count of attempted robbery. Clerk's Transcript ("CT") 156-159. The trial court sentenced Petitioner to a term of 25 years to life pursuant

1    to California's Three Strikes Law plus an additional term of 5 years under

2    Penal Code § 667(a)(1). CT 177-178, 202-204.

3        Petitioner appealed his conviction to the California Court of Appeal. CT

4    205. Petitioner also filed a concurrent habeas petition challenging the

5    conviction. <u>See</u> Respondent's Notice of Lodging, Lodged Document ("LD") 9.

6    The California Court of Appeal ordered the habeas petition to be considered

7    along with Petitioner's appeal. LD 10. On February 27, 2013, the California

8    Court of Appeal issued a reasoned opinion affirming the judgment and also

9    summarily denied habeas corpus relief. LD 13, 14.

10        Petitioner filed petitions for review in the California Supreme Court

11    challenging the California Court of Appeal's opinion affirming the judgment

12    and the denial of habeas relief. LD 17, 18. On May 15, 2013, both of

13    Petitioner's petitions for review were summarily denied by the California

14    Supreme Court. LD 19, 20.

15        On May 16, 2014, Petitioner filed a Petition for Writ of Habeas Corpus

16    by a Person in State Custody in this Court. Dkt. 1 ("Petition"). The Petition

17    argues that trial counsel provided ineffective assistance in three ways: (1) by

18    failing to object that evidence that Petitioner was riding in a stolen car at the

19    time of the carjacking was inadmissible as uncharged act evidence; (2) by

20    failing to argue that such evidence was more prejudicial than probative under

21    California Evidence Code § 352; and (3) by entering into a stipulation that the

22    car was stolen. Petition at 8. Respondent filed an answer to the Petition on

23    July 7, 2014. Dkt. 10 ("Answer"). Petitioner filed a reply to the answer on

24    September 5, 2014. Dkt. 14 ("Reply").

25    ///

26    ///

27    ///

28    ///

**B.     Summary of the Evidence Presented at Trial**

The underlying facts are taken from the unpublished opinion of the California Court of Appeal.[1] See LD 13 at 3-4. Unless rebutted by clear and convincing evidence, these facts are presumed correct. Tilcock v. Budge, 538 F.3d 1138, 1141 (9th Cir. 2008); 28 U.S.C. § 2254 (e)(1). Petitioner has not attempted to overcome the presumption with respect to the underlying events.

Trejo testified he was at the home of his sister Enriqueta Trejo with several family members on December 25, 2009 when he went to retrieve something from his car around 8:00 p.m. As he walked to the car, he saw Moreno [Petitioner's co-defendant] sitting in the driver's seat and Petitioner sitting in the passenger seat of a truck.[*] Petitioner asked Trejo if he had a spare tire. Trejo responded his spare would be too small, but agreed to ask his family whether anyone had a suitable spare tire. No one else was willing to help.

> [*] A stipulation was read to the jury that the truck had been taken without the owner's permission while parked on a street in San Diego County. Pursuant to the court's pretrial ruling, the jury was instructed there was no evidence Moreno or Petitioner had stolen the truck.

Enriqueta Trejo testified she took the trash outside around 8:00 p.m. and saw Moreno and Petitioner sitting in the truck. Moreno asked her if she had a spare tire.[**] She eventually agreed to give them one in exchange for $100, which she would return

---

[1] In all quoted sections of the Report and Recommendation, Petitioner's name has been replaced with "Petitioner."

when Moreno returned the tire. Braulio Trejo was not present during this exchange.

> ** Petitioner contends Enriqueta Trejo likely misidentified Moreno as the person who asked to borrow the tire because Moreno had gained about 45 pounds since he was taken into custody.

Petitioner subsequently came to the house and asked if Trejo had any tools. Trejo agreed to help change the tire. When this tire did not fit, Petitioner asked if Trejo could give him and Moreno a ride. Trejo agreed. As Trejo sat in his car, Petitioner got in the passenger seat. Moreno came to the driver's side door and told Trejo to get out. When Trejo hesitated, Moreno repeated the command several times and put a knife to Trejo's neck through the open window. Trejo got out but immediately punched Moreno in the face. The two men fought. Moreno swung the knife at Trejo but dropped it at some point in the fight. After a few minutes Trejo's family members came outside to help. Petitioner fled, but Trejo and others restrained Moreno until the police arrived. Petitioner was apprehended shortly thereafter.

The knife was recovered by the police from the roof of Trejo's car where one of his sisters had placed it. No fingerprints were found on the knife.

Moreno and Petitioner did not testify or present any other witnesses in their defense.

LD 13 at 3-4.

///

///

///

4

## II.
## STANDARD OF REVIEW

Petitioner's claim is subject to the "'demanding but not insatiable'" standard of the Antiterrorism and Effective Death Penalty Act ("AEDPA"). Sessoms v. Grounds, --- F.3d ---, 2014 WL 4558005, at *1 (9th Cir. Sept. 22, 2014) (en banc) (quoting Miller-El v. Dretke, 545 U.S. 231, 240 (2005)). Overall, AEDPA presents "a difficult to meet and highly deferential standard for evaluating state court rulings, which demands that state court decisions be given the benefit of the doubt." Cullen v. Pinholster, --- U.S. ---, 131 S. Ct. 1388, 1398 (2011) (citations and quotations omitted). Under AEDPA, federal courts may grant habeas relief to a state prisoner "with respect to any claim that was adjudicated on the merits in State court proceedings" only if that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Although a particular state court decision may be both "contrary to" and "an unreasonable application of" controlling Supreme Court law, the two phrases have distinct meanings. Williams v. Taylor, 529 U.S. 362, 391, 413 (2000). A state court decision is "contrary to" clearly established federal law if it either applies a rule that contradicts governing Supreme Court law or reaches a result that differs from the result the Supreme Court reached on "materially indistinguishable" facts. Early v. Packer, 537 U.S. 3, 8 (2002). A state court need not cite or even be aware of the controlling Supreme Court cases, "so

1  long as neither the reasoning nor the result of the state-court decision

2  contradicts them." Id.

3      State court decisions that are not "contrary to" Supreme Court law may

4  be set aside on federal habeas review only "if they are not merely erroneous,

5  but 'an unreasonable application' of clearly established federal law, or based

6  on 'an unreasonable determination of the facts' (emphasis added)." Id. at 11. A

7  state court decision that correctly identifies the governing legal rule may be

8  rejected if it unreasonably applies the rule to the facts of a particular case.

9  Williams, 529 U.S. at 406-08. To obtain federal habeas relief for such an

10  "unreasonable application," however, a petitioner must show that the state

11  court's application of Supreme Court law was "objectively unreasonable." Id.

12  at 409-10. To warrant habeas relief, a state court's ruling must be "so lacking in

13  justification that there was an error well understood and comprehended in

14  existing law beyond any possibility for fairminded disagreement." Harrington

15  v. Richter, 562 U.S. 86, 131 S. Ct. 770, 786-87 (2011). Put another way, a state

16  court determination that a claim lacks merit "precludes federal habeas relief so

17  long as fairminded jurists could disagree" on the correctness of that ruling. Id.

18  at 786. Federal habeas corpus review therefore serves as "a guard against

19  extreme malfunctions in the state criminal justice systems, not a substitute for

20  ordinary error correction through appeal." Id. (internal quotation omitted).

21      Here, Petitioner raised his single ground for habeas relief, an ineffective

22  assistance of counsel claim, on direct appeal.[2] LD 4 at 11-20. The ineffective

23  assistance claim was also presented in Petitioner's concurrent habeas petition

24  in the California Court of Appeal. LD 9 at 9-17. The California Court of

25  _____

26      [2] Petitioner raised other grounds for relief on direct appeal and in his

27  state habeas petition. Those grounds were not raised in his Petition and will

   not be addressed here.

28

6

Appeal affirmed Petitioner's conviction on direct appeal and addressed Petitioner's ineffective assistance claim as follows: "Because the evidence the truck had been taken from its owner without permission was properly admitted at trial, we reject [Petitioner's] contention his counsel provided ineffective assistance when he failed to join [his co-defendant's] objection to the evidence." LD 13 at 9 n.5. The California Court of Appeal simultaneously issued an order summarily denying Petitioner's habeas petition. LD 14. Petitioner requested discretionary review and habeas review by the California Supreme Court, which summarily denied both petitions. See LD 19, 20. Thus, for purposes of applying the AEDPA standard of review, the California Court of Appeal decision on direct appeal constitutes the relevant state court adjudication on the merits for this claim. See Johnson v. Williams, --- U.S. ---, 133 S. Ct. 1088, 1094 n.1 (2013) (noting that federal habeas court "look[s] through" summary denial of claim to last reasoned decision from the state courts to address the claim).

Where AEDPA applies to claims that were denied without explanation on the merits by the state courts, "the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." Richter, 131 S. Ct. at 784. Consequently, without explicit explanation from the state courts, "[u]nder § 2254(d), a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the U.S. Supreme] Court." Id. at 786.

///
///
///
///

7

# III.

## PETITIONER'S CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL DOES NOT WARRANT HABEAS RELIEF

Petitioner argues that his defense counsel was ineffective because counsel: (1) failed to object that evidence that the truck was stolen was inadmissible as uncharged act evidence; (2) failed to object to the same evidence under California Evidence Code § 352 because such evidence was more prejudicial than probative; and (3) stipulated that the truck was stolen. Petition at 8.

### A.    Applicable Law

The United States Supreme Court has determined that a petitioner claiming ineffective assistance of counsel must show that counsel's performance was deficient and that the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). "Deficient performance" means unreasonable representation falling below professional norms prevailing at the time of trial. Id. at 688-89. To show deficient performance, the petitioner must overcome a "strong presumption" that his lawyer "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690. Further, the petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." Id. The initial court considering the claim must then "determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id.

To meet his burden of showing the distinctive kind of "prejudice" required by Strickland, the petitioner must affirmatively "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a

probability sufficient to undermine confidence in the outcome." Id. at 694; see also Richter, 131 S. Ct. at 791 ("In assessing prejudice under Strickland, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently."). However, "[t]his does not require a showing that counsel's actions 'more likely than not altered the outcome.'" Richter, 131 S. Ct. at 792 citing Strickland, at 693, 697.

In Richter, the Supreme Court reiterated that AEDPA requires an additional level of deference to a state court decision rejecting an ineffective-assistance-of-counsel claim: "The pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard." 131 S. Ct. at 785. The Supreme Court further explained,

> Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both "highly deferential," . . . and when the two apply in tandem, review is "doubly" so. The Strickland standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Id. at 788 (citations omitted).

///
///
///

9

**B.**   <u>Analysis</u>

    **1.**    **Trial Counsel's Failure to Make a § 352 Objection**

    At a pre-trial hearing, Moreno's counsel objected to the introduction of evidence that the truck Moreno and Petitioner were driving in was stolen, arguing that such evidence would be "prejudicial" in the absence of any evidence that defendants knew that the truck was stolen. 2 Reporter's Transcript ("RT") 7. Petitioner's counsel did not join in this objection. The prosecutor argued that the evidence was relevant for two purposes: first, to provide motive for stealing the victim's car, and second, to forestall any speculation on the jurors' part about why defendants would carjack the victim and leave behind a car that could be somehow tied to them. 2 RT 8. The trial court found that the evidence was "relevant for those issues described" and accordingly overruled Moreno's objection. <u>Id.</u>

    Moreno's counsel then raised the possibility of a limiting instruction to make clear that the evidence was admitted for a limited purpose. <u>Id.</u> The prosecutor indicated that he did not object "generally," but noted that he thought it was "fair" for jurors to infer that defendants knew the car was stolen "given their actions." 2 RT 8-9. After some further discussion, the trial court indicated its willingness to give such an instruction at the end of the case and the prosecutor further noted that "I certainly don't intend to argue they stole the car." 2 RT 9.

    After the close of evidence, defense counsel submitted a proposed instruction adapted from Judicial Council of California Criminal Jury Instruction No. 303. The proposed defense instruction read as follows:

        During the trial, certain evidence was admitted for a limited purpose. You may consider that evidence only for that purpose and for no other. You have heard evidence that a truck was stolen. There is no evidence that Mr. Moreno or Petitioner stole the truck

or knew that the truck was stolen.

Clerk's Transcript ("CT") 118. The prosecutor objected to the use of the phrase "or knew that the truck was stolen," arguing that "the jury could infer that [Petitioner and Moreno] knew the truck was stolen." 3 RT 904. Moreno's counsel argued that omission of the phrase was "highly prejudicial." 3 RT 905. Petitioner's counsel further argued that that there was no reasonable inference that Petitioner knew the truck was stolen. Id. The trial court disagreed, noting that "I did find the evidence presented by the People is relevant as set forth by the People in their argument, and in this specific instruction the People have basically [conceded] there is no evidence that [defendants] stole the truck." 3 RT 905-06. However, the trial court concluded that "to say that there is no evidence that they knew that the truck was stolen, I don't think the Court needs to give that portion of it." 3 RT 906.

The California Court of Appeal found that the trial court did not abuse its discretion when it found the evidence relevant and not unduly prejudicial. LD 13 at 7. The state appellate court stated that "[w]ithout question, the absence of any proof Moreno and Petitioner knew the truck was stolen undermines the [prosecution's] argument at trial the evidence provided a motive for attempting to steal Trejo's car – to get away from the stolen truck." Id. at 8. However, the state appellate court also found that "the [prosecution] properly asserted the evidence was relevant to forestall the jury from speculating why they would leave behind their own vehicle when it could so easily link them to the crime." Id. The state appellate court further stated that while the trial court "perhaps could have limited the evidence to a statement the truck was not registered to Moreno or Petitioner, or otherwise linked to them," that "under the circumstances it was not unduly prejudicial [under § 352] to admit evidence the truck was stolen." Id. The state appellate court then proceeded to determine that even if the trial court had erred, such error was

11

harmless because "Trejo's testimony was strong evidence Moreno and Petitioner had committed the crimes." Id. at 9.

In light of the state appellate court's analysis that the evidence that the truck was stolen was properly admitted over Moreno's Evidence Code § 352 objection, this Court finds that counsel's failure to join Moreno's objection cannot constitute ineffective assistance of counsel. Even if this Court was so inclined, this Court cannot quarrel with the state appellate court's conclusion that the evidence was properly admitted. See Bradshaw v. Richey, 546 U.S. 74, 76 (2005) (per curiam ) ("[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."); Medley v. Runnels, 506 F.3d 857, 862 (9th Cir. 2007). Because joining Moreno's objection would have been futile, Petitioner cannot show deficient performance. See Rupe v. Wood, 93 F.3d 1434, 1445 (9th Cir.1996) ("[T]he failure to take a futile action can never be deficient performance."); James v. Borg, 24 F.3d 20, 27 (9th Cir. 1994) ("Counsel's failure to make a futile motion does not constitute ineffective assistance of counsel."). Where, as here, Petitioner has failed to show deficient performance, there is no need to reach the prejudice prong of Strickland. See Strickland, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); Rios v. Rocha, 299 F.3d 796, 805 (9th Cir. 2002) ("Failure to satisfy either prong of the Strickland test obviates the need to consider the other.").

### 2.    Trial Counsel's Stipulation

After the trial court's pre-trial ruling that cleared the way for evidence that the truck was stolen, the prosecutor indicated during his opening statement that he would call the owner of the truck who would testify that he lived in San Diego and that the truck was taken without his permission. 2 RT

317-18. The following day, Petitioner's counsel and Moreno's counsel each entered into a stipulation that made calling the truck's owner unnecessary, stipulating that the truck was stolen in San Diego on December 16, 2009, several days before the carjacking incident. 3 RT 633.

Stipulations involving evidentiary facts are tactical decisions. See, e.g., Butcher v. Marquez, 758 F.2d 373, 378 (9th Cir. 1985). "Tactical decisions that are not objectively unreasonable do not constitute ineffective assistance of counsel." Hensley v. Crist, 67 F.3d 181, 185 (9th Cir. 1995).

The state appellate court did not directly address Petitioner's argument that trial counsel was ineffective for stipulating that the truck was stolen. Accordingly, Petitioner must show that there was "no reasonable basis" for the state appellate court to deny relief. Richter, 131 S. Ct. at 784.

Petitioner cannot meet this burden. The state appellate court could have viewed trial counsel's decision to stipulate as an objectively reasonable tactical decision. This is so even though Petitioner's trial counsel has stated, in a post-trial declaration, that he agreed to the stipulation in order to curry favor with the judge because getting the prosecution's witness to court was going to be difficult. See LD 9 at 19.[3] It would not have been unreasonable for the state appellate court to conclude that avoiding delay or obstruction in the trial was a calculated tactical decision that did not constitute deficient performance. See, e.g., United States v. Abbas, No. 07-3375, 2008 WL 1815796, at *3 (C.D. Cal. Apr. 17, 2008) (declining to find deficient performance where counsel stipulated to evidence because he did not want to appear obstructionist before jury). Counsel's subsequent regret, formed with the benefit of hindsight, does not prove that the original decision to stipulate was objectively unreasonable.

---

[3] The record contains no information to suggest such difficulty; however, the Court will accept counsel's declaration at face value.

1   See, e.g., Smith v. Wasden, No. 08-0227, 2012 WL 892325, at *19 (D. Id.
2   Mar. 14, 2012) (finding that trial counsel's post-trial regret to presentation of
3   evidence through stipulation rather than live testimony did not demonstrate
4   deficient performance).

5        Finally, even if Petitioner's counsel had performed deficiently in
6   stipulating to the stolen truck evidence, there was no apparent prejudice to
7   Petitioner. Nothing in the record suggests that absent the stipulation the
8   prosecution would not have presented the evidence through the testimony of
9   the truck owner. The prosecutor told the jurors that the truck owner would
10  testify during opening statements. See 2 RT 317-18. At the end of the court
11  day, the prosecutor indicated that a witness from San Diego—presumably the
12  truck owner—was going to be transported at county expense to appear two
13  days later. 2 RT 465. Court re-convened the next morning and after the first
14  witness was excused, the parties entered into the stipulation. 3 RT 633. Thus,
15  even had Petitioner's counsel refused to stipulate, it appears that the
16  prosecution would have nonetheless proceeded to prove that the truck was
17  stolen through its witness. Accordingly, Petitioner was not prejudiced by
18  counsel's stipulation.

19  **3.    Trial Counsel's Failure to Make a § 1101 Objection**
20       During trial, neither Petitioner's nor Moreno's counsel raised a
21  California Evidence Code § 1101 objection to the evidence that the truck was
22  stolen. LD 13 at 7. On direct appeal, the California Court of Appeal found that
23  Petitioner's failure to object meant that he forfeited the ability to argue that the
24  evidence was improperly admitted under § 1101. Id. Moreover, the state
25  appellate court went on to conclude that the evidence was not uncharged act
26  evidence under § 1101. Id. at 8.
27       This Court is bound by the state appellate court's conclusion that the
28  evidence that the truck was stolen was not uncharged act evidence under

California law. <u>Richey</u>, 546 U.S. at 76 ("[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."). The state appellate court found that § 1101 did not apply because the prosecution was "not seeking to introduce, and there was no evidence of, an uncharged act of misconduct." LD 13 at 9. Accordingly, Petitioner's ineffective assistance claim fails since Petitioner cannot show deficient performance as a result of counsel's failure to object under § 1101. <u>See</u> Rupe, 93 F.3d at 1445 ("[T]he failure to take a futile action can never be deficient performance.").

Moreover, even if the Court assumes that the failure to make a § 1101 objection to the fact that the truck was stolen was deficient performance, the Court finds that there was not a reasonable probability that the outcome would have been different. The prosecution's principal witness was Trejo, the victim of the carjacking. Trejo stated that he and Petitioner could not the borrowed spare tire on the truck. 2 RT 351-352. Petitioner then asked Trejo for a ride. 2 RT 353-54. After initially refusing, Trejo agreed to give Petitioner and Moreno a ride. 2 RT 354. After Trejo pulled his car out from the curb, Petitioner and Moreno stood behind Trejo's car speaking quietly. 2 RT 356-357. Petitioner then got into the front passenger seat of Trejo's car. 2 RT 357. Moreno came to the driver's door and told Trejo to get out of the car at knifepoint. 2 RT 357-358. After Moreno's third demand that Trejo exit the vehicle, Petitioner said, "Yeah, that's right. Get out." 2 RT 361. Trejo exited the car and then engaged in an altercation with Moreno. 2 RT 362-370. At one point during the altercation, Trejo heard Petitioner say, "Hurry up. Hurry up." 2 RT 368. Trejo ended up back in the car on top of Moreno in the driver's seat, holding Moreno down and hitting Moreno repeatedly. 2 RT 370-371. During the time Trejo was beating Moreno, Petitioner grabbed Trejo's sweater and pulled Trejo towards him. 2 RT 371.

As the state appellate court noted, "Trejo's testimony was strong evidence Moreno and Petitioner had committed the crimes." LD 13 at 9. Furthermore, "[w]hether Moreno and Petitioner were in a stolen truck prior to the commission of the crimes has no bearing on Trejo's credibility." Id. Thus, under any standard of review, much less the doubly-deferential standard applied to the state appellate court's <u>Strickland</u> analysis under AEPDA, this Court cannot determine that the state court was objectively unreasonable when it concluded that "[i]t is not reasonably probable the verdict would have been more favorable to Petitioner absent admission of the evidence." Id.

In sum, Petitioner is not entitled to habeas corpus relief with respect to his claims of ineffective assistance of counsel. The state appellate court's rejection of Petitioner's ineffective assistance of counsel claims was not an unreasonable application of <u>Strickland</u>.

## IV.

## CONCLUSION

IT IS THEREFORE RECOMMENDED that the District Judge issue an Order: (1) accepting this Report and Recommendation; and (2) directing that Judgment be entered denying the Petition and dismissing this action with prejudice.

Dated: October 27, 2014

DOUGLAS F. McCORMICK

_____
DOUGLAS F. McCORMICK
United States Magistrate Judge